## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RAPID ENTERPRISES, LLC, d/b/a EXPRESS ONE, a Utah limited liability company,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, and UNITED STATES OF AMERICA,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF JURISDICTION**<br><br>Case No. 2:22-cv-00627-JNP-JCB<br><br>District Judge Jill N. Parrish |

Through this action, Rapid Enterprises, LLC, doing business as Express One ("Plaintiff" or "Express One"), asserts a number of claims arising out of or otherwise related to business arrangements it formerly had with the United States Postal Service ("Defendant" or "USPS"). Before the court is Defendant's Motion to Dismiss the Amended Complaint for Lack of Jurisdiction, ECF No. 50 ("Motion"), filed pursuant to FED. R. CIV. P. 12(b)(1). For the reasons outlined below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

USPS has contracted with private companies to act as third-party resellers of its services since 2009. ECF No. 36 ("Am. Compl.") at 1. In exchange for directing merchants towards using its shipping services, USPS provides these resellers with discounted shipping rates. *Id.* Express One is one such reseller. *Id.* On February 5, 2013, Express One and USPS entered into a Shipping Services Contract that was set to expire in 2018. *See* ECF No. 36-1 ("2013 Agreement"). The

parties amended this contract multiple times, each time extending the length of the relationship. *See* ECF Nos. 36-2, 36-3. According to Express One, it invested "tens of millions of dollars and thousands of hours building the largest reseller network in the USPS system" in reliance on promises allegedly made by USPS that it would not prematurely terminate its reseller program. Am. Compl. at 6. In April 2019, USPS informed Express One that it intended to cancel the reseller program and terminate the then-effective 2013 Agreement. *Id.* at 7–8. USPS later reversed course and continued the reseller program. *Id*.

On January 1, 2020, Express One and USPS entered into a new shipping services agreement that was set to expire on December 31, 2023. ECF No. 36-4 ("Agreement" or "2020 Agreement") at 12. The 2020 Agreement contained an "Expiration Date, Term, and Termination Clause" provision. *Id.* Pursuant to this clause, USPS could terminate the contract prior to December 31, 2023 by providing Express One with written notice 90 calendar days in advance. *See* 2020 Agreement at 12. Unlike the 2013 Agreement, the 2020 Agreement required Express One to provide USPS with its customer pricing and volume information. Am. Compl. at 10; 2020 Agreement at 3 ("All discounted prices detailed in this Contract are dependent upon Customer providing a valid provider customer ID (PCID) for each transaction[.]"). The 2020 Agreement explained that USPS needed this information to verify that the discounts that Express One was providing to its customers complied with the contractual requirements. 2020 Agreement at 12 ("Customer shall provide the Postal Service with all [customer types] . . . along with their associated volumes, spend, MIDs . . . and all other information the Postal Service determines necessary for purposes of validating Merchant and Platform shipping volume and spend per product.").

2

Express One asserts that USPS used this information for purposes other than those specified in the 2020 Agreement. Am. Compl. at 15–21. For example, Express One claims that USPS launched its own e-commerce platform and offered companies that used its platform preferred rates that were not available to third party resellers such as Express One. *Id.* at 22–26. According to Express One, USPS then used the customer lists that Express One had provided pursuant to the 2020 Agreement to inappropriately poach Express One's former customers. *Id.* at 22.

On June 30, 2022, Shibani Gambhir, Vice President of Business Development for USPS, and Mark Worrall, Director of Retail and Healthcare Accounts for USPS, called Bret Miller, CEO of Express One, and informed him that USPS would be discontinuing the reseller program and terminating its contract with Express One. Am. Compl. at 24–25. The following day, USPS emailed Mr. Miller and informed him that USPS was terminating the 2020 Agreement on September 30, 2022. *See* ECF No. 2-5. The 2020 Agreement provides that Express One "may appeal a Postal Service decision regarding the calculation of prices . . . or other implementation or operational issues under this Contract by submitting a written appeal . . . [to the USPS] Pricing and Classification Service Center (PCSC)." 2020 Agreement at 13. On July 29, 2022, Express One attempted to appeal the termination decision with PCSC. *See* ECF No. 60-1. However, PCSC denied the appeal because "[t]he PCSC does not . . . have the authority to opine on or overturn contract terminations." ECF No. 60-2. "Such business determinations fall outside the categories reviewable by PSCS under the terms of your contract." *Id.*

On September 23, 2022, Express One filed a complaint in this court arising from USPS's decision to terminate the 2020 Agreement. *See* ECF No. 2. On September 29, 2022, Express One filed a motion for a TRO, a preliminary injunction, and a permanent injunction enjoining

"Defendants from using Express One's trade secrets, prohibiting the USPS from terminating the 2019 contract" and "requiring the USPS to comply with the Postal Service Reform Act." ECF No. 10. On September 30, 2022, the court held a hearing on the motion for preliminary relief. ECF No. 23. In the hearing, USPS argued that this court lacked subject-matter jurisdiction over Express One's claims because the 2020 Agreement was covered by the Contract Disputes Act ("CDA"), 41 U.S.C. § 7102, and that the CDA grants the Court of Federal Claims with exclusive jurisdiction over CDA disputes. *See* ECF No. 44 at 42:3–43:17, 47:21–48:12, 59:1–6.

After reviewing the 2020 Agreement and caselaw that was introduced for the first time in the hearing, the court expressed serious doubts as to whether it could exercise subject-matter jurisdiction over Express One's claims and requested further briefing so that it could enter a definitive ruling on the jurisdictional issue. *Id*. at 58:9–62:21. Putting the jurisdictional concerns to the side, the court then ruled that Express One had failed to demonstrate an entitlement to preliminary relief. *Id.* at 62:23-63:2. This was so for three reasons. First, Express One had not established irreparable harm. *Id.* at 63:7–14; *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). ("[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."). Second, Express One had not demonstrated a high likelihood of success on the merits of its claim. ECF No. 44 at 63:23–65:10. Third, the court was not persuaded that it was "in the public interest to force the Postal Service to proceed down a path of running its business that is at odds with what it has concluded is the best for consumers and for the Postal Service." *Id.* at 63:23–65:17. As Express One had met none of the elements required for preliminary relief, the court denied its motion.

On October 18, 2022, Express One filed the Amended Complaint, ECF No. 36, which asserts that:

4

1. USPS breached the 2020 Agreement ("Claim One");

2. USPS breached the implied covenant of good faith and fair dealing ("Claim Two");

3. USPS breached the implied duty to disclose superior knowledge ("Claim Three");

4. USPS engaged in misrepresentation to induce Express One to enter the 2020 Agreement ("Claim Four");

5. USPS was unjustly enriched ("Claim Five");

6. USPS misappropriated Express One's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. ("Claim Six");

7. USPS misappropriated Express One's trade secrets in violation of Utah's Uniform Trade Secrets Act ("UTSA"), § 13-24-1 *et seq*. ("Claim Seven");

8. USPS committed common law misappropriation ("Claim Eight");

9. USPS misappropriated Express One's trade secrets in violation of the Fifth Amendment, U.S. CONST. art. V. ("Claim Nine"); and

10. Express One is entitled to avail itself of the doctrine of equitable estoppel ("Claim Ten").

*See* Am. Compl. ¶¶ 108-207.[1] On October 31, 2022, USPS filed the motion now before this court. ECF No. 50 ("Motion"). USPS no longer claims that the 2020 Agreement is covered by the CDA. *Id.* at 2 n.1. USPS now asserts, however, other arguments supporting its claim that this court lacks jurisdiction to hear Claims One, Four, and Six through Ten. Motion at 3. Defendant does not, however, move for dismissal of Claims Two, Three, and Five on jurisdictional grounds. *Id.*

---

[1] Through its Eleventh Claim, Express One seeks declaratory and injunctive relief. *Id.* at 46. However, this claim does not state a cause of action and merely describes Express One's requested relief.

For the reasons set out below, this court **DISMISSES** Claim Four *and* Claims Six through Ten in their entirety, and the Motion is thereby **GRANTED IN PART**. However, this court concludes that it has jurisdiction to hear Claims One through Three *and* Claim Five *to the extent* that they do not plead claims arising in tort or under 39 U.S.C. § 404a. Thus, because Claim One is not dismissed in its entirety as Defendant moves, the Motion is **DENIED IN PART**.

## LEGAL STANDARD

Federal courts "are courts of limited subject-matter jurisdiction." *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (citing *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004)). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action from federal court for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Under Rule 12(b)(1), the burden of establishing subject-matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To establish jurisdiction, a plaintiff "must 'allege in [its] pleading the facts essential to show jurisdiction' and 'must support [those facts] by competent proof.'" *U.S. ex Rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 551 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

When a party moves to dismiss an action under Rule 12(b)(1), it "mount[s] either a facial or a factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citations omitted). "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id*. The court may consider relevant evidence in adjudicating a factual attack on subject-matter jurisdiction. *Id*. The court "must [also], *sua sponte*, satisfy itself

6

of its power to adjudicate in every case and at every stage of the proceedings." *State Farm Mut.*
*Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998).

## ANALYSIS

USPS asserts three arguments for why this court lacks subject-matter jurisdiction. First,
USPS argues that this court does not have jurisdiction over Plaintiff's claims that USPS engaged
in anticompetitive behavior in violation of 39 U.S.C. § 404a ("§ 404a"). Second, USPS argues that
Claims Four and Ten, which Express One would characterize as contract claims, are actually
species of the traditionally recognized tort of misrepresentation and thus barred by the plain text
of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. Third, USPS argues that Claims
Six through Nine correspond to the tort of misappropriation of trade secrets and are similarly
subject to the FTCA. Because Plaintiff has not satisfied the FTCA administrative exhaustion
requirements as to these claims, Defendant argues that this court lacks jurisdiction. Each argument
is considered in turn below.

## I.     39 U.S.C. § 404a and the Postal Accountability and Enhancement Act

The court reiterates that Plaintiff bears the burden of demonstrating that this court has
subject-matter jurisdiction. *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).
While "[t]he court should not be quick to dismiss a claim for lack of jurisdiction," *Salazar v. City*
*of Albuquerque*, 776 F. Supp. 2d 1217, 1228 (D.N.M. 2011) (citing *Bell v. Hood*, 327 U.S. 678,
682 (1946)), it is not "the proper function of the district court to assume the role of advocate for
the pro se litigant," let alone for a party represented by experienced counsel. *Hall v. Bellmon*, 935
F.2d 1106, 1110 (10th Cir. 1991).

Before turning to the substance of the jurisdictional issue, the court notes that although the
USPS has framed its Postal Accountability and Enhancement Act of 2006 ("PAEA") jurisdictional

argument solely in reference to Claim One, Plaintiff has interspersed PAEA references throughout the Amended Complaint, including in other Claims for Relief. *See* Am. Compl. ¶¶ 122, 131, 140, 202, 207 (referencing Defendant's alleged violation of PAEA in Claims Two, Three, Four, Ten, and Eleven). Accordingly, the court's ruling on the PAEA jurisdictional issue applies to all claims based on the PAEA—not just to Claim One.

Additionally, the court also notes that Plaintiff's references to the PAEA will be interpreted as pursuing recovery under § 404a, the only PAEA provision expressly identified in the Amended Complaint. 39 U.S.C. § 404a provides, in relevant part, that "[e]xcept as specifically authorized by law, the Postal Service may not . . . establish any rule or regulation (including any standard) the effect of which is to preclude competition or establish the terms of competition unless the Postal Service demonstrates that the regulation does not create an unfair competitive advantage." Although the substantive PAEA violations that Plaintiff alleges arise under § 404a, Express One requests recovery for *any* PAEA violation. *See e.g.* Am. Compl. ¶¶ 28, 122. But because the complaint clearly states that Express One is attempting to recover for USPS's allegedly anticompetitive behavior pursuant to the PAEA, and because anticompetitive behavior is governed by § 404a, the court will not sift through other sections of the PAEA, which Express One has not identified, in order to establish an alternative basis for Plaintiff's claims.

Having clarified that references in the Amended Complaint to the PAEA are understood to refer only to § 404a, the court moves to the substance of the alleged PAEA violations. Plaintiff alleges that USPS engaged in anticompetitive behavior by ending its reseller program and terminating the 2020 Agreement prior to December 31, 2023. Am. Compl. at 9–25. Although the 2020 Agreement does not explicitly refer to anticompetitive behavior, Express One argues that USPS is contractually prohibited from engaging in such behavior because the preamble of the 2020

8

Agreement refers to the PAEA. *See* 2020 Agreement at 1 ("[I]t is the intention of the Parties to enter into a shipping services contract . . . that will comply with the requirements of Title 39 United States Code, as amended by the Postal Accountability and Enhancement Act of 2006."). And so, according to Plaintiff, because the preamble to the 2020 Agreement provides that the agreement will comply with the PAEA, the anticompetitive provisions of that section are incorporated by reference into the contract, and the USPS thus breached the 2020 Agreement. Express One argues that by thus framing the statutory violations as breach of contract claims, it can avoid the jurisdictional requirements of § 404a. ECF No. 44 at 50:17–20.

Avoiding the jurisdictional requirements of § 404a would be necessary because 39 U.S.C. § 3662 confers exclusive jurisdiction over § 404a claims to the PRC.[2] Although Plaintiff argues that § 3662's channeling of jurisdiction does not divest this court of jurisdiction, *see* ECF No. 60 at 6, its arguments are unavailing. The court finds the Tenth Circuit's interpretation of a prior version of § 3662 informative. In *United States v. Bovard*, 1995 U.S. App. LEXIS 3846 (10th Cir. 1995) (unpublished), the Tenth Circuit concluded that a prior version of § 3662 vested exclusive jurisdiction over service complaints against USPS in the PRC. The prior version of § 3662, in relevant part, provided the following: "Interested parties who believe . . . that they are not receiving postal service in accordance with the policies of this title *may lodge a complaint with the Postal*

---

[2] Congress waived USPS's sovereign immunity to most civil suits through 39 U.S.C. § 401 ("Subject to the provisions of section 404a, the Postal Service shall have the . . . general power[] . . . to sue and be sued in its official name . . . ."). Plaintiffs can file most civil actions against USPS in federal district courts. *See* 39 U.S.C. § 409(a) ("United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service."). At the same time, § 3662 provides that a complainant who files a claim relating to "the requirements of the provisions of sections 101(d), 401(2), 403(c), 404a, or 601 . . . or regulations promulgated under any of those provisions . . . may lodge a complaint with the Postal Regulatory Commission in such form and manner as the Commission may prescribe." *Id*. at § 3662.

*Rate Commission in such form and in such manner as it may prescribe.*"[3] Postal Reorganization

Act of 1970 ("PRA 1970"), Pub. Law. No. 91-375 (1970) (emphasis added), *repealed by* Postal

Accountability Enhancement Act ("PAEA"), Pub. Law. No. 109-435 (2006). The Tenth Circuit

concluded that "[t]he language of section 3662 makes clear that a postal customer's remedy for

unsatisfactory service lies with the Postal Rate Commission, and that Congress did not intend to

create a private right of action for service complaints." *Id.*[4]

This court is persuaded that § 3662 continues to vest exclusive jurisdiction over § 404

claims in the PRC. And because § 3662 explicitly refers to § 404a, the court lacks subject-matter

jurisdiction over Express One's § 404a claims, despite Plaintiff's attempt to artfully plead such

claims as arising in contract.[5] Plaintiff maintains, however, that even if the court lacks subject-

---

[3] Plaintiff argues that the term "may" in this context should be read as purely permissive, *see* ECF No. 60 at 7, and that § 3662 thus does not deprive this court of jurisdiction to hear Plaintiff's claim. But the relevant language of § 3662 remains nearly identical to that interpreted by the Tenth Circuit in *Bovard*, 1995 U.S. App. LEXIS 3846, and the court concludes that the Tenth Circuit's rationale in that case remains persuasive. *Accord Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 986 (Fed. Cir. 2013). That is, as used in § 3662, the term "may" means only that an aggrieved party is not *required* to file a complaint, but to the extent they elect to do so, it must be filed with the PRC.

[4] Because the cases cited by Plaintiff that might suggest a different result—*New York v. Biden*, No. 20-CV-2340(EGS), 2022 WL 5241880, at *9 (D.D.C. Oct. 6, 2022) (concluding that § 3662 did not foreclose the district court from exercising subject-matter jurisdiction on a procedural challenge brought under § 3661); *Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 861 (E.D. Pa. 2020) (same); *S. California Edison v. United States Postal Serv.*, 134 F. Supp. 3d 311, 318 (D.D.C. 2015) (concluding that § 3662 did not foreclose the district court from exercising jurisdiction over plaintiff's appeal of a revenue deficiency assessment that had already yielded a final agency decision)—all involve allegations arising from supposed actions not enumerated in § 3662, this court finds them unpersuasive and inapplicable.

[5] "[Courts] must look beyond the literal meaning of the language to ascertain the real cause of complaint." *Reynolds v. United States*, 643 F.2d 707, 712 (10th Cir. 1981) (internal citation and quotation omitted); *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971); *accord LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 800 (8th Cir. 2006). The court finds the Eighth Circuit's decision in *LeMay* particularly informative here. In that case, the plaintiff attempted to frame a service complaint against the USPS, over which the PRC had exclusive jurisdiction, as a contract claim.

matter jurisdiction over claims arising under § 404a, the court can otherwise exercise subject-matter jurisdiction over the breach of contract claims. Specifically, at Am. Compl. ¶ 113, Plaintiff alleges that USPS breached the 2020 Agreement by "wrongfully terminating [the Agreement]," and by using "Express One's confidential and proprietary business information" in a way that breached the use limitations as set forth by the 2020 Agreement. Am. Compl. ¶ 113.

To the extent that Claim One pleads a breach of contract independent of any considerations arising under § 404a, this court agrees. Therefore, because Congress generally waived USPS's sovereign immunity to civil suits through 39 U.S.C. § 401, and because this court has subject matter jurisdiction over these claims pursuant to 39 U.S.C. § 409(a), jurisdiction over that claim is proper. The court thus **GRANTS IN PART** and **DENIES IN PART** USPS's motion to dismiss Claim One for lack of subject-matter jurisdiction.

## II.    Sovereign Immunity and the Federal Tort Claims Act

Having concluded that the court lacks jurisdiction over claims arising under § 404a claims, the court moves to USPS's jurisdictional arguments pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. USPS first argues that this court lacks jurisdiction over Claims Four and Ten because they arise from the tort of misrepresentation and are therefore barred by the FTCA. Next, USPS argues that this court lacks jurisdiction over Claims Six through Nine because these are misappropriation of trade secrets tort claims and because Express One has not complied with the FTCA administrative requirements before filing this lawsuit.

---

450 F.3d at 797. The Eighth Circuit rejected the plaintiff's jurisdictional argument and concluded that although "[t]he words echo contract, [] the issues are classic questions of postal rates and services." *Id*. at 801. Additionally, the court harbors grave doubts that the contract at issue does, in fact, incorporate by reference the relevant portions of the statute as Plaintiff claims.

A.      **Intentional Torts (Claims Four and Ten)**

First, as to Claims Four and Ten, USPS argues that this court lacks jurisdiction over Claim Four (misrepresentation to induce Express One to enter into the 2020 Agreement) and Claim Ten (estoppel) because they plead intentional torts for which the United States has not waived sovereign immunity. Motion at 17. Plaintiff, on the other hand, argues that Claims Four and Ten should instead be understood as contract claims, and that this court thus has jurisdiction to hear them pursuant to the USPS's general wavier of sovereign immunity through 39 U.S.C. §§ 401 and 409(a). *See* ECF No. 60 at 10-13.

"Sovereign immunity precludes federal court jurisdiction." *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017). Although § 409(a) permits plaintiffs to bring cases against USPS generally, § 409(a) does not apply to tort claims asserted against USPS, which are squarely governed by the FTCA. 39 U.S.C. § 409(c). Through the FTCA, the United States has partially waived its sovereign immunity as to certain state-law tort claims. 28 U.S.C. § 1346(b)(1). The waiver of sovereign immunity provided under the FTCA is subject to what the Supreme Court and Tenth Circuit have previously called "the intentional tort exception." *Levin v. United States*, 568 U.S. 503, 509 (2013); *Millbrook v. United States*, 569 U.S. 50, 53 (2013); *Benavidez v. United States*, 177 F.3d 927, 929 (10th Cir. 1999). This exception, codified at 28 U.S.C. § 2680(h), expressly excepts (and therefore excludes from federal courts' jurisdiction, *Garling*, 849 F.3d at 1294) "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

Generally, waivers of sovereign immunity are construed narrowly by federal courts, tending in favor of the sovereign, *Lane v. Peña*, 518 U.S. 187, 192 (1996). However, because the

FTCA "waives the Government's immunity from suit in sweeping language," *United States v. Yellow Cab Co.*, 340 U.S. 543, 547 (1951), and because "unduly generous interpretations of the [FTCA's] exceptions run the risk of defeating the central purpose of the statute," *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984), "the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Id.* (quoting *Dalehite v. United States*, 346 U.S. 15, 31 (1953)); *Dolan v. United States Postal Serv.*, 546 U.S. 481, 491-92 (2006). Having made that inquiry here, this court concludes that Claims Four and Ten fall within the words and reason of the § 2680(h) exception.

The starting point in our analysis is the plain language of the § 2680(h) exception of misrepresentation claims, taken in light of the Plaintiff's facial pleading for misrepresentation *per se*, featuring the classic elements of such a claim, all against a background of doctrinal consensus that claims precisely like this one are outside of federal courts' jurisdiction. *See* 15A MOORE'S FEDERAL PRACTICE - CIVIL § 105.26[e].[6] Plaintiff's burden in reframing these traditional tort claims as claims arising under contracts is thus a heavy one.

In order to try and thread Claims Four and Ten through the eye of FTCA's needle, Plaintiff cites *Union Pac. R.R. Co. v. U.S. ex rel. U.S. Army Corps of Engineers*, 591 F.3d 1311 (10th Cir. 2010), for the proposition that where a claim "is founded upon a contract," it falls outside of the

---

[6] "Claims based on misrepresentations of federal government actors are not actionable under the FTCA. Misrepresentation may refer to the communication or miscommunication of, or failure to communicate, information on which others might be expected to rely in economic matters. The exception applies primarily to claims of economic loss flowing from commercial transactions, but it is not limited to that context. The so-called misrepresentation exception applies to both negligent and intentional misrepresentations, as well as to affirmative acts and omissions of material fact."

scope of the FTCA. *Id*. at 1320. But the claim at issue in *Union Pac. R.R. Co.* was very much unlike the claims pleaded in the instant case. Rather than merely relating to the formation of a contract or its inducement, the claim in that case was "negligent performance of a contract." *Id.* at 1315. Negligent breach of the contract would, axiomatically, also constitute breach of contract, and the relationship between the tort so-called and the contract was thus "intimate." *Id*. Because proving that claim would necessarily require a determination of what the contract meant and whether it was breached, exercising jurisdiction over the negligent breach of contract claim would "undermine the Tucker Act's policy in favor of uniform construction of federal contracts." *Id.* at 1315-16.

In other words, the tort of negligent breach could *only* arise under the terms of the contract, which was thus the sole source of the duty at issue. It is in this sense that some out-of-circuit authority has held that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract." *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002). In such "close cases," where the duty at issue for what might *otherwise* seem to be a tort (given, for example, a "negligent" or "negligence" moniker) arises out of contractual duties, "whether to characterize a claim as one in tort or as founded on contract will depend on the purpose served by the characterization." *Union Pac. R.R. Co.*, 591 F.3d at 1314.

But the considerations at play in *Union Pac. R.R. Co.* simply are not at issue here and this is not such a close case. The duties that Plaintiff alleged Defendant to have breached are duties generally owed to all persons and do not arise under contract, and the claims themselves are not so intimately related as to "aris[e] in contract." *Awad*, 301 F.3d at 1372. Instead, Claim Four, entitled "Misrepresentation in the Inducement of a Contract," arises from pre-contractual representations made by the USPS, Am. Compl. ¶ 135, which representations were "*knowingly*

14

*false*," *id.* ¶ 136 (emphasis added), and material to Plaintiff's agreement to a contract, *id.* ¶ 136, and upon which Plaintiff relied in the formation of a contract. *Id.* ¶ 137. In determining whether Plaintiff has properly pleaded or proved this black-letter tortious intentional misrepresentation claim, *see* Restatement (Second) of Torts, § 525; *accord State v. Apotex Corp.*, 2012 UT 36, ¶ 58, 282 P.3d 66, 80; 15A MOORE'S FEDERAL PRACTICE - CIVIL § 105.26[e], this court would neither have to determine the boundaries of the contract at issue nor make any conclusions as to its breach, unlike as in *Union Pac. R.R. Co*.

Plaintiff's Tenth Claim is no different. Claim Ten, titled "Estoppel," pleads that Defendant made certain promises and representations, Am. Compl. ¶ 196, which were false, *id.* ¶ 197, upon which the Plaintiff reasonably relied, *id.* ¶¶ 198-200, and which caused damages. *Id.* Thus, Claim Ten is best understood as pleading under estoppel by misrepresentation. *See Estoppel*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[E]stoppel by misrepresentation. (1882) An estoppel that arises when one makes a false statement that induces another person to believe something and that results in that person's reasonable and detrimental reliance on the belief."). It is, therefore, conceptually duplicative of the Fourth Claim, and similarly pleads only the violation of a general duty owed to all with whom one interacts, rather than any particular duty created by contract. Both claims contain the "essential elements of misrepresentation," and such misrepresentations are central, rather than collateral, to the claims asserted, thus demanding the application of § 2680(h). *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 854 (10th Cir. 2005).

Even putting Plaintiff's *Union Pac. R.R. Co.* arguments to the side, however, this court concludes that its jurisdictional hand is clamped shut by binding precedent of the Supreme Court's interpretation of the FTCA. In *Block v. Neal*, the Court made clear that, as dictated by its own precedent, "the essence of an action for misrepresentation, whether negligent or intentional, is the

communication of misinformation on which the recipient relies," 460 U.S. 289, 296 (1983), and that such claims, when based on injury suffered by reliance, are categorically "barred under the misrepresentation exception" to the FTCA. *Id*. Thus, where a claim relies upon the government's misstatements or misrepresentations that induce injury, the FTCA does not waive sovereign immunity.

Further, the *Neal* Court affirmed and reiterated its earlier decision, announced in *Neustadt*, that a claim arising from the government's breach of a duty to use due care in obtaining and communicating information (upon which the plaintiff may reasonably be expected to rely in the conduct of his economic affairs), would have been understood by the enacting Congress of the relevant FTCA provision to fall within the misrepresentation exception. 460 U.S. at 295-96 (citing 366 U.S. 696, 706-07 (1961)). Here, because Claims Four and Ten, on their face, arise under the breach of precisely such a duty to obtain and communicate information (and particularly because such claims assert *intentional*, rather than merely *negligent*, misrepresentation), and because the context at issue involves Plaintiff's reasonable reliance in the conduct of its economic affairs, these claims are clearly excepted under § 2680(h) as interpreted in *Neustadt* and *Neal*. *Union Pac. R.R. Co.*'s "close cases" doctrine, 591 F.3d at 1314, is thus wholly inapplicable.

Additionally, on the issue of estoppel as pleaded in Claim Ten, the Supreme Court case *Office of Personnel Management v. Richmond* is on all fours. That case, like *Neustadt* and *Neal*, emphasized that the plain language of 28 U.S.C. § 2680(h) excludes "by its terms . . . both negligent and intentional misrepresentation claims from its coverage." 496 U.S. 414, 430 (1990). Even more on-the-nose, however, the Court in *Richmond* held that a plaintiff's claim, although labelled "estoppel," "[was] in practical effect for misrepresentation." *Id.* Thus, to exercise federal

jurisdiction over such an estoppel claim would be to "nullify a congressional decision against authorization of the same class of claims [namely, misrepresentation]." *Id.*

Reference to the underlying decision reviewed (and reversed) by the Supreme Court confirms that the plaintiff in that case pleaded a species of estoppel functionally identical to the one pleaded by Plaintiff here—in essence, estoppel by misrepresentation involving detrimental reliance upon a false or misleading representation made by the government. *See Richmond v. Office of Pers. Mgmt.*, 862 F.2d 294, 297-98 (Fed. Cir. 1988), *rev'd* 496 U.S. 414 (1990). Such a claim could only arise under the general tort duties as outlined under *Neustadt* and *Neal*, rather than duties specifically arising under contract, as in the Tenth Circuit's *Union Pac. R.R. Co.*, and thus fall within the scope of § 2680(h).

In short, controlling interpretations of the intentional tort exception, 28 U.S.C. § 2680(h), as set forth in *Neustadt*, *Neal*, and *Richmond*, definitively close the jurisdictional door on Claims Four and Ten, and Plaintiff has not sufficiently borne its duty to prove a waiver of sovereign immunity. *See Ohlsen v. United States*, 998 F.3d 1143, 1154 (10th Cir. 2021). Defendant's motion to dismiss Counts Four and Ten for lack of subject-matter jurisdiction is thus **GRANTED**. Additionally, insofar as any of Plaintiff's other claims pray this court to grant relief from any breach of duty or injury arising from the government's actions contrary to "USPS representations," *see* Am. Compl. ¶¶ 113, 115, 122, 131, 207 (pleaded in Claims One, Two, Three, and Eleven), this court concludes that it lacks jurisdiction to do so.

### B.     Misappropriation of Trade Secret Claims (Claims Six through Nine)

Next, Defendant argues that this court lacks jurisdiction over Claims Six through Nine because they are subject to the FTCA and because Plaintiff failed to initiate, let alone satisfy, the FTCA administrative requirements. On this issue, this court considers itself bound by previous

17

pronouncements from the Tenth Circuit that the FTCA's exhaustion requirement, found in 28 U.S.C. § 2675(a), is jurisdictional. *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). This principle has been affirmed as recently as 2017. *Gabriel v. United States*, 683 F. App'x 671, 674 (10th Cir. 2017) ("Section 2675(a) requires claimants to exhaust their administrative remedies before initiating a suit under the Federal Tort Claims Act. Because this claim was unexhausted, the district court lacked jurisdiction."); *accord Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016); *cf. Dewalt v. United States*, 2022 U.S. App. LEXIS 8637, at *2 n.1 (10th Cir. 2022).

This court is not ignorant, however, of the Supreme Court's recent decision in *Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023), which held that the exhaustion requirement regarding federal court review of final removal orders of aliens in 8 U.S.C. § 1252(d)(1) was nonjurisdictional, and that exhaustion requirements *generally* are only jurisdictional if Congress states so clearly. *See id.* at 1112. *Santos-Zacaria* thus continues to expound the delineation of truly jurisdictional rules that the Court began in *Arbaugh v. Y & H Corp.*, 546 U. S. 500, 515 (2006). While three Tenth Circuit opinions published as of the date of this order cite *Santos-Zacaria*,[7] none applies the logic of *Santos-Zacaria* to any statutory provision other than 8 U.S.C. § 1252(d)(1). Thus, without clear direction from the Tenth Circuit, and trusting that *Gabriel* represents the sound judgment of the Tenth Circuit that the FTCA exhaustion requirement remains jurisdictional in

---

[7] *Ogaz v. Garland*, No. 22-9584, 2023 U.S. App. LEXIS 21673, at *3 (10th Cir. Aug. 18, 2023); *A.B. v. Garland*, No. 21-9584 (Petition for Review), 2023 U.S. App. LEXIS 17756, at *2 (10th Cir. July 13, 2023); *Araujo-Sotelo v. Garland*, No. 22-9524, 2023 U.S. App. LEXIS 17008, at *5-6 (10th Cir. July 6, 2023).

nature, to the extent that the claims at issue in Plaintiff's Claims Six through Nine are covered by the FTCA's exhaustion requirement and unexhausted, the court concludes that they are subject to dismissal under FED. R. CIV. P. 12(b)(1).

To reiterate, the FTCA waives the federal government's sovereign immunity for generally cognizable state-law tort claims. *Mecca v. United States*, 389 F. App'x, 775, 779 (10th Cir. 2010) (explaining that a plaintiff must provide an "analogous state law duty" to invoke the FTCA); 28 U.S.C. § 1346(b)(1) (waiving sovereign immunity for certain tort actions against the United States, "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred."). The court concludes that the tort of misappropriation of trade secrets is covered by the FTCA because Utah recognizes such a tort. *See* UTAH CODE ANN. §§ 13-24-1, 13-24-8 (codifying misappropriation of trade secrets claims by "displacing conflicting tort, restitutionary, and other law . . . providing civil remedies for misappropriation of a trade secret."); *J & K Computer Sys., Inc. v. Parrish*, 642 P.2d 732, 735 (Utah 1982).

Plaintiff attempts to establish subject-matter jurisdiction over its unexhausted claims through several arguments. First, Express One argues that the FTCA does not apply to Claims Six through Nine because it initially requested injunctive relief rather than money damages for these claims. Second, Express One argues that this court has jurisdiction over Claims Six through Nine because the FTCA does not cover violations of federal statutes or the Constitution. Third, Express One argues that even if Claims Six through Nine are covered by the FTCA, Express One either complied with the FTCA's administrative procedures by sending a letter to PCSC or, in the alternative, that USPS waived the administrative compliance requirement through the 2020 Agreement. The court considers and rejects each argument in turn.

### 1) The Applicability of 28 U.S.C. § 1346(b)(1)

The FTCA applies only in tort actions "for money damages." *See* 28 U.S.C. § 2675(a); 28 U.S.C. § 1346(b)(1). Plaintiff argues that the FTCA does not apply here because "the thrust of its suit was to preserve the contractual relationship with the USPS through injunctive or declaratory relief." ECF No. 60 at 18. Express One reasons that the FTCA is inapplicable because it initially requested relief that is not available pursuant to the FTCA. The court is convinced, however, that Plaintiff's claims in the Amended Complaint are properly characterized as seeking money damages notwithstanding its additional prayer for injunctive or declaratory relief. "[J]urisdiction may not be avoided by 'framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States.'" *Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997) (quoting *New Mexico v. Regan*, 745 F.2d 1318, 1322 (10th Cir.1984)). "A plaintiff's prime objective or essential purpose is monetary unless the non-monetary relief sought has 'significant prospective effect' or 'considerable value' apart from the claim for monetary relief.'" *Id.* at 449 (quoting *Francis E. Heydt Co. v. United States*, 948 F.2d 672, 677 (10th Cir.1991)).

Plaintiff argues that the fact that it sought a preliminary injunction proves that its primary objective was injunctive relief. This court disagrees. The Amended Complaint alleges that USPS breached the 2020 Agreement and that USPS misappropriated Express One's confidential information. Money damages are the typical form of relief in both breach of contract and tortious misappropriation of trade secrets claims. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353–54 (10th Cir. 1989); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F. App'x 63, 79 (10th Cir. 2007).

Moreover, the court was not persuaded during the September 29, 2022 hearing that specific performance was an appropriate remedy in the first place. In order to be entitled to specific

performance, a plaintiff must demonstrate that "damages at law cannot adequately compensate the injury sustained from the breach or cannot be reasonably measured." *Tri-State Generation*, 874 F.2d at 1354. In light of Express One's nearly ten-year long reseller relationship with USPS, the court was convinced that the parties would be able to calculate a definite measure of damages if Express One were to prevail. *See* ECF No. 44 at 63:7–14. In short, the court is convinced that the gravamen of the Amended Complaint is directed towards money damages and Express One has not avoided the FTCA by cursorily asserting otherwise.

### 2) Claim Six ("DTSA") and Claim Nine (Constitutional Takings)

Plaintiff next argues that the FTCA does not provide the exclusive remedy if the claim is framed as a violation of a federal statute (Claim Six) or the Constitution (Claim Nine). To support this proposition, Express One cites 28 U.S.C. § 2679(b), which provides that the FTCA's exclusive remedial framework does not extend to claims brought "for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2); ECF No. 60 at 14. But § 2679(b) is inapplicable here because 28 U.S.C. § 2679(b) clearly limits such actions that can be maintained independent of the FTCA to those brought against "an employee of the Government." *Id*. Moreover, even assuming, *arguendo*, that the court were to consider Claim Six or Claim Nine independently of the FTCA, Express One has not demonstrated that the court has jurisdiction over these claims. To determine whether USPS can be sued pursuant to a specific federal statute, the court first considers the statute itself. If the statute does not provide guidance on USPS's amenability to suit, the court asks two questions: "[F]irst[,] whether there is a waiver of sovereign immunity for actions against the Postal Service. If there is, we ask the second question, which is whether the substantive prohibitions of the [federal law]

apply to an independent establishment of the Executive Branch of the United States." *USPS v. Flamingo Industries*, 540 U.S. 736, 743 (2004).

### a) Claim Six (DTSA)

The Defend Trade Secrets Act ("DTSA") does not specifically address the matter of USPS's liability. *See* 18 U.S.C. § 1836. Therefore, the court considers the two prongs of *Flamingo*, 540 U.S. at 743. Express One argues that under the first prong, § 409(a) waives USPS's sovereign immunity to civil suits generally. But this general waiver does not apply to "tort claims arising out of activities of the Postal Service." § 409(c). Because Claim Six arises from USPS allegedly engaging in the tort of misappropriation of trade secrets, for which liability has not been waived pursuant to §409(c), Express One has failed to establish that the general waiver of liability applies.

Even if Express One could establish that USPS satisfied the first step of the *Flamingo* analysis, USPS would fail at the second step. Express One cannot demonstrate that the substantive provisions of the DTSA apply to "an independent establishment of the Executive Branch." *Flamingo*, 540 U.S. at 743. The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines "trade secret" to mean:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information . . . if — (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

Further, the DTSA defines the term "misappropriation" to include, among other things, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means," such as misrepresentation or a breach of a duty to maintain secrecy, "to acquire knowledge of the trade secret."[8] 18 U.S.C. §§ 1839(5)(B)(i), 6(a). To establish a claim under the DTSA, the plaintiff must therefore show: "(1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1175 (D. Colo. 2019) (citation omitted).

The elements of a trade secret claim under the UTSA closely resemble those of a claim under the DTSA. Under the UTSA, a "trade secret" is defined as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

UTAH CODE ANN. § 13-24-2(4). The UTSA further defines "misappropriation" to include the "disclosure or use of a trade secret of another without express or implied consent by a person who

---

[8] The DTSA also defines of "misappropriation" to include the use of a trade secret without consent by a person who, at the time of use, "knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who had used improper means to acquire the trade secret" or who had a duty to maintain the secrecy of the trade secret. 18 U.S.C. § 1839(5)(B)(ii).

. . . used improper means," such as misrepresentation or breach of a duty to maintain secrecy, "to acquire knowledge of the trade secret." *Id.* §§ 13-24-2(1), (2)(b).[9]

It is well accepted that "[t]he violation of a federal regulation in and of itself is not a basis for liability under the FTCA." *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 973 n.2 (10th Cir. 1994). However, the fact that the tortious behavior under state law is simultaneously covered by a parallel federal statute does not mean that a plaintiff can avoid the FTCA by pleading the claim as a violation of federal law. The DTSA substantively addresses the same violation—the tort of misappropriation of trade secrets—as the UTSA. The FTCA requires plaintiffs to exhaust their administrative remedies before filing a misappropriation of trade secrets claim against USPS, regardless of whether that claim is framed as a UTSA or DTSA violation. In other words, Express One has failed to demonstrate that the substantive prohibitions of the DTSA create an independent basis for claims against the USPS, and this court lacks jurisdiction as a result.

### b) Claim Nine (Constitutional Takings)

Claim Nine asserts a constitutional taking. Am. Compl. ¶ 192. As a preliminary matter, the court notes that Express One asserted Claim Nine only against the United States, not against USPS. The court is persuaded that this was intentional, as Express One orally represented to the court that it had carefully crafted its complaint. *See* ECF No. 44 at 44:3–10. Express One has since requested

---

[9] Like the DTSA, the UTSA also defines "misappropriation" to include the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret" was derived through a person who had utilized improper means to acquire it or was derived through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. UTAH CODE ANN. § 13-24-2(2)(b)(ii).

leave to amend Claim Nine, however, to add USPS as a defendant. ECF No. 60 at 23. However, the court denies this request as it is persuaded that amendment would be futile. *See E. Spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004). Even if Express One added USPS, as with the DSTA claim, the general waiver of liability pursuant to § 409(a) does not apply to Claim Nine because Claim Nine arises from the tort of misappropriation of trade secrets.

Constitutional takings claims are asserted against the United States under the Tucker Act. 28 U.S.C. §§ 1346, 1491. That Act "vests exclusive jurisdiction with the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000." *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) (quoting *Burkins v. United States,* 112 F.3d 444, 449 (10th Cir. 1997)). To avoid the Court of Federal Claims, Express One asserts that the Constitution itself waives the United States' sovereign immunity. ECF No. 60 at 21 ("With respect to Express One's takings claim, against the United States, the independent waiver of sovereign immunity is in the constitution itself.").

But the Tenth Circuit has concluded that there is no independent waiver of sovereign immunity embedded within the Constitution. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005); *Harrison v. United States,* 329 F. App'x 179, 181 (10th Cir. 2009). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4, (1969)). For this reason, the court has no doubt that Plaintiff's attempt to derive a waiver of sovereign immunity and a cause of action from the text of the Constitution itself in an end-run around the Tucker Act's

allocation of federal court jurisdiction is unavailing. In summary, court concludes that it lacks jurisdiction to hear Claims Six and Nine for the reasons stated above.

### 3) The FTCA's Administrative Requirements and the Issue of Waiver

Finally, Express One argues that even if the misappropriation of trade secrets claims are subject to the FTCA, this court has jurisdiction over Claims Six through Nine because Express One has satisfied the FTCA administrative exhaustion requirements. Alternatively, Express One argues that USPS waived the FTCA requirements through the 2020 Agreement. "As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Duplan*, 188 F.3d at 1199. The FTCA consists of two parts, 28 U.S.C. § 2675(a), which sets forth an administrative-exhaustion requirement and 28 U.S.C. § 2401(b), which sets forth a notice requirement. *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015).

Complainants who wish to assert a tort claim under the FTCA against USPS must file a complaint with "the Tort Claims Coordinator for the Postal Service District Office where the accident occurred." 39 C.F.R. §§ 912.5, 912.4. The claim "may be filed at any office of the Postal Service, or sent directly to the Chief Counsel, Torts, General Law Service Center, USPS National Tort Center." *Id*. § 912.4. Additionally:

> [A] claim shall be deemed to have been presented when the U.S. Postal Service receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95, Claim for Damage or Injury, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

*Id.* at § 912.5(a). If the Tort Claims Coordinator does not resolve a properly presented claim within six months, the absence of action may "be deemed a final denial of the claim" and the claimant

may proceed to federal court. 28 U.S.C. § 2675. "Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed. The requirements are jurisdictional and cannot be waived." *ex rel. Aguilar*, 397 F.3d 840, 852 (10th Cir. 2005) (quoting *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)).

On July 1, 2022, USPS provided Express One with written notice that the 2020 Agreement would terminate on September 30, 2022. *See* ECF No. 2-5. On July 29, 2022, Express One appealed USPS's decision by mailing a sixteen-page letter to the USPS Pricing and Classification Service Center Manager. *See* ECF No. 60-1 ("July 29 Letter"). On August 24, 2022, PCSC denied Express One's appeal because "[t]he PCSC does not . . . have the authority to opine on or overturn contract terminations. Such business determinations fall outside the categories reviewable by PSCS under the terms of your contract." ECF No. 60-2.

Express One alleges that it exhausted the FTCA administrative presentment requirements through the July 29 Letter. This court disagrees. While the July 29 Letter provides written notification of the misappropriation of trade secrets claims, Express One did not send the letter to the USPS National Tort center.[10] Instead, Express One sent the letter to PSCS, which does not handle tort claims against USPS. Express One cannot plausibly maintain that it satisfied the presentment requirement by mailing written notice of their claims to the wrong location.

---

[10] Express One also could have filed its claim with the Tort Claims Coordinator for the Postal Service District Office where the accident occurred or at any Postal Service office. *See* 39 C.F.R. § 912.4. But USPS represents that it could not find any administrative record of a tort claim filed by Rapid Enterprises or Express One. *See* ECF No. 50-1. Express One asserts that the Herbst Affidavit, *id.*, is unreliable because it is unsigned. ECF No. 60 at 18. But the Herbst Affidavit is clearly signed. *See* ECF No. 50-1.

Alternatively, Express One asserts that USPS waived the jurisdictional requirements of 39 C.F.R. § 912 by setting out a different notification requirement in the 2020 Agreement. Express One asserts that the July 29 Letter complies with this alternative notification requirement. Again, this court disagrees. As a legal matter, the Tenth Circuit has indicated that an agency cannot waive the FTCA notice requirements. *See ex rel. Aguilar*, 397 F.3d at 852 ("[T]he notice requirements established by the FTCA must be strictly construed. The requirements are jurisdictional and cannot be waived."). Express One cites to a district court opinion, *Rawers v. United States*, for the proposition that the FTCA notice regulations should not be considered as a bar to subject matter jurisdiction. 488 F. Supp. 3d 1059, 1122–26 (D.N.M. 2020). But the court is not persuaded that *Rawers* is on point or sufficiently persuasive.

In that case, a postal service employee had negligently collided into Ms. Rawers's vehicle and injured her on April 5, 2016. *Id.* at 1073. On December 18, 2017, Ms. Rawers filed a claim with the National Tort Center in compliance with 39 C.F.R. § 912. *Id.* at 1076. On June 15, 2018, Ms. Rawers sent a letter to the National Tort Center requesting an update on the status of her claim, and no response was provided. *Id.* On September 28, 2018, Ms. Rawers sent a letter to the National Tort Center increasing her claim amount because she had undergone additional medical procedures for her injuries. *Id.* at 1077. Again, no response was provided. Finally, on January 15, 2019, Ms. Rawers filed a lawsuit against USPS in federal court. *Id*.

The United States argued that the federal district court lacked subject-matter jurisdiction over Ms. Rawers' suit because she had filed her complaint with the federal court four months after her last correspondence with the National Tort Center, instead of waiting six months as required by 28 C.F.R. § 14.2. *Id.* at 1122. However, the district court was persuaded that it could exercise subject-matter jurisdiction because 28 C.F.R. § 14.2(c) is a claim-processing rule and not

28

jurisdictional. *Id.* at 1126 ("Neither the statute nor the regulation specifically mentions the federal court or jurisdiction. . . . [And as] [t]he Tenth Circuit has not yet declared § 14.2(c) to be jurisdictional . . . the Court will not do so now."). Here, however, USPS is not arguing that this court lacks jurisdiction because of a technical defect with Express One's administrative claim but rather that Express One altogether failed to file an administrative claim in the first place. *See* ECF No. 50-1. For this reason, the court declines to follow the *Rawers* court in asserting subject-matter jurisdiction.

Moreover, as a factual matter, the court is not persuaded that the 2020 Agreement provided an alternative mechanism for filing an administrative tort claim. The appeals clause in the 2020 Agreement provides the following:

> Customer may appeal a Postal Service decision *regarding the calculation of prices, the amount of postage paid, or other implementation or operational issues under this Contract* by submitting a written appeal within thirty (30) calendar days of receipt of notification of the determination giving rise to the appeal to: Manager, Pricing and Classification Service Center (PSCS) . . . . The decision of the PCSC Manager will be administratively final. Any decision that is not appealed as prescribed become the final Postal Service decision.

2020 Agreement at 13 (emphasis added). This clause does not permit Express One to raise administrative tort claims covered by the FTCA with PSCS. The fact that PSCS decisions "regarding the calculation of prices, the amount of postage paid, or other implementation or operational issues under this Contract" are "administratively final" has no bearing on the finality of tort claims against USPS. This court is not persuaded that the 2020 Agreement alters the administrative requirements of 39 C.F.R. § 912. Thus, the court concludes that Express One has not satisfied the FTCA administrative requirements, and that this court lacks subject-matter

jurisdiction over its tort claims as a result. The court therefore **GRANTS** USPS's motion to dismiss Claims Six through Nine.

## CONCLUSION & ORDER

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss the Amended Complaint for Lack of Jurisdiction, ECF No. 50, as follows:

1) Pursuant to 39 U.S.C. § 3662, the PRA has exclusive jurisdiction over 39 U.S.C. § 404a. Thus, insofar as any of Plaintiff's claims pray this court to grant relief from any breach of duty or injury arising from Defendant's alleged violations of § 404a, *see* Am. Compl. ¶¶ 110-11, 113, 115, 122, 131, 140, 202, 207 (pleaded in Claims One, Two, Three, Four, Six, and Eleven), this court lacks jurisdiction to do so.

2) This court lacks jurisdiction over Claims Four and Ten, which are properly characterized as intentional tort claims. Defendant's motion to dismiss these claims in their entirety for lack of subject-matter jurisdiction is thus **GRANTED**. Additionally, insofar as any of Plaintiff's other claims seek relief from any breach of duty or injury arising from the government's actions contrary to "USPS representations," *see* Am. Compl. ¶¶ 113, 115, 122, 131, 207 (pleaded in Claims One, Two, Three, and Eleven), this court lacks jurisdiction to do so.

3) Claims Six through Nine, which allege that USPS misappropriated Express One's trade secrets, are within the ambit of the FTCA. Because Express One has not exhausted its administrative remedies as to these claims, the court lacks jurisdiction over them. Defendant's motion to dismiss these claims in their entirety is thus

**GRANTED**, and Express One's request for leave to amend Claim Nine is **DENIED** as futile.

4) The court has subject-matter jurisdiction over Claims One, Two, Three, and Five to the extent that such claims do not arise from the government's prior representations or violations of 39 U.S.C. § 404a. Defendant's motion to dismiss Claim One in its entirety, then, is **DENIED**.

DATED September 14th, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge