SEALED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RAPID ENTERPRISES, LLC, d/b/a EXPRESS ONE, a Utah limited liability company,<br><br>　　　Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, and UNITED STATES OF AMERICA,<br><br>　　　Defendants. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>**FILED UNDER SEAL**<br><br>Case No. 2:22-cv-00627-JNP-JCB<br><br>District Judge Jill N. Parrish |

Rapid Enterprises, LLC, doing business as Express One ("Express One"), filed suit against the United States Postal Service ("USPS"). It asserts claims arising out of or otherwise related to business arrangements it formerly had with USPS. Before the court is Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim. ECF No. 71 ("Motion" or "Mot."). For the reasons outlined below, Defendants' Motion is **GRANTED**.

## FACTUAL BACKGROUND

USPS formerly contracted with private companies to act as third-party resellers of its services. ECF No. 36 ("Amended Complaint" or "Am. Compl.") at 1. From January 2013 to September 2022, USPS entered into two such contracts with Express One. Mot. at 3. The first contract, executed in January 2013, was originally for a term of five years and later extended, through amendment, to a total term of eight years. *Id.*; Am. Compl. ¶¶ 15-19. In April 2019, USPS

signaled an intent to cancel the reseller program and terminate the 2013 contract. Mot. at 3. USPS reversed course, however, and elected to extend the reseller program. *Id.*

In December 2019, USPS entered into a second shipping services agreement (the contract-at-suit in this action) with Express One, set to expire on December 31, 2023. ECF No. 36-4 ("Contract" or "2019 Contract") at 12. Under its terms, USPS could terminate the Contract prior to December 31, 2023 by providing Express One with written notice 90 calendar days in advance. *See* 2019 Contract at 12. In mid-2022, USPS exercised this contractual right and terminated the Contract, having decided to end the reseller program and launch its own, disintermediated e-commerce platform following internal evaluation of program's costs and benefits.[1]

Among other things, the 2019 Contract required Express One to provide USPS with its customer pricing and volume information. Am. Compl. at 10; 2019 Contract at 3. Express One asserts that USPS used this information for purposes other than those specified in the 2019 Contract. Am. Compl. at 15–21. For example, Express One claims that USPS used the customer lists that Express One had provided pursuant to the 2019 Contract to inappropriately poach Express One's former customers. *Id.* at 22.

On September 23, 2022, Express One filed suit. *See* ECF No. 2. On October 18, 2022, Express One filed its Amended Complaint, ECF No. 36, which asserts that:

1. USPS breached the 2019 Contract ("Claim One");
2. USPS breached the implied covenant of good faith and fair dealing ("Claim Two");
3. USPS breached the implied duty to disclose superior knowledge ("Claim Three");

---

[1] As USPS acknowledges, the decision to terminate the 2019 Contract and disintermediate the reseller program was the result of months of planning and study by USPS. Mot. at 4. As part of this planning process, in September 2021, USPS managers held a meeting that showcased a slide deck discussing, among other things, a potential "path to establish direct relationships with platforms and merchants to take control of the reseller spread." Am. Compl. ¶ 69.

4. USPS engaged in misrepresentation to induce Express One to enter the 2019 Contract ("Claim Four");

5. USPS was unjustly enriched ("Claim Five");

6. USPS misappropriated Express One's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. ("Claim Six");

7. USPS misappropriated Express One's trade secrets in violation of Utah's Uniform Trade Secrets Act ("UTSA"), § 13-24-1 *et seq*. ("Claim Seven");

8. USPS committed common law misappropriation ("Claim Eight");

9. USPS misappropriated Express One's trade secrets in violation of the Fifth Amendment, U.S. CONST. art. V. ("Claim Nine"); and

10. Express One is entitled to avail itself of the doctrine of equitable estoppel ("Claim Ten").

*See* Am. Compl. ¶¶ 108-207.[2]

On October 31, 2022, USPS moved this court to dismiss the Amended Complaint for lack of jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). *See* ECF No. 50. On September 14, 2023, this court granted in part and denied in part Defendants' Rule 12(b)(1) motion, dismissing Express One's Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims in their entirety. *See generally* ECF No. 86 ("12(b)(1) Order").[3] Additionally, this court held that it lacked jurisdiction to hear Express One's tort claims or any claim predicated on the Postal Accountability and Enhancement Act of 2006 (codified at 39 U.S.C. § 3600 *et seq*.) ("PAEA"). Thus, in resolving the present Motion, the court considers only the sufficiency of the pleading of Express One's claims arising under contract and quasi-contract—that is, the First, Second, Third, and Fifth Claims.

---

[2] Through its Eleventh Claim, Express One seeks declaratory and injunctive relief. *Id.* at 46. However, this claim does not state a cause of action and merely describes Express One's requested relief.

[3] *Rapid Enters., LLC v. United States Postal Serv.*, 2023 U.S. Dist. LEXIS 164617, 2023 WL 5979999 (D. Utah Sep. 14, 2023).

## LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusion and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4]

## ANALYSIS

USPS moves for the dismissal of Express One's contract and quasi-contract claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Express One responds by arguing that, under its interpretation of the 2019 Contract, it has properly alleged breach of contract, violations of the implied duty of good faith and the duty to disclose superior knowledge, and unjust enrichment. *See* ECF Nos. 81 (unsealed opposition memorandum), 83 (sealed opposition memorandum) ("Opp'n Mem.") *passim*.

---

[4] Express One's response memorandum suggests that the proper standard under Rule 12(b)(6) is provided by the "no set of facts" test in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See* Opp'n Mem. at 2. But this test was "retired" by the Supreme Court in *Twombly*. 550 U.S. at 562-63; *see also Iqbal*, 556 U.S. at 670.

At the outset, the court notes that the parties, through their respective memoranda, do not seem to agree on what substantive body of law ought to be applied to Express One's contract claims. USPS, in its Motion and reply memorandum, ECF No. 90 ("Reply Mem."), relies primarily on federal case law.[5] Express One, in its response memorandum, relies largely on Utah common law. Thus, the court finds it appropriate to briefly outline the law to be applied before considering the sufficiency of Express One's pleadings.

The 2019 Contract states that it is governed and should be construed "in accordance with principles of federal law." 2019 Contract at 16. Contractual choice-of-law elections such as this one are, absent special circumstances, appropriately honored by reviewing courts. *See Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999). And, generally, "obligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).

Additionally, this action arises under federal law and is not a diversity action, *see* Am. Compl. ¶ 10, therefore presumptively requiring the application of federal common law. *Mirrow v. Barreto*, 80 F. App'x 616, 618 (10th Cir. 2003) (unpublished) (citing *King v. United States*, 301 F.3d 1270, 1275-77 (10th Cir. 2002)); *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010-11 & n.3 (10th Cir. 2000)); *see Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1279 (10th Cir. 1991).

However, in the arena of contracts, "knowing whether federal law governs . . . does not much advance the ball." *United States v. Turley*, 878 F.3d 953, 956 (10th Cir. 2017) (quoting *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85 (1994)). This is because there is a "presumption

---

[5] The court notes, however, that many of the federal cases cited actually apply state law.

that state law should be incorporated into federal common law," *Turley*, 878 F.3d at 956 (quoting

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991)).

Although a provision stating that the contract be governed by "principles of federal law"

implicitly permits this court to incorporate state law (because of the nature of the federal common

law of contract), this court relies on rules of decision as provided by the federal common law *per

se* to give maximum effect to the expectations of the contracting parties as expressed in the

Contract.[6]

### I.  First Claim: Breach of Contract

Express One's First Claim is for breach of contract. Am. Compl. ¶¶ 108-15. This court

begins its inquiry into Express One's breach-of-contract claims by referring to the language of the

---

[6] However, if any state's law were to be properly incorporated into this court's analysis of the Contract and the claims arising thereunder, the court posits that it would be the law of Utah.

Because federal contract claims are at issue here, the court would apply federal choice-of-law principles, searching for the law of the state with the most significant relationship to the Contract to supplement and incorporate into federal common law where necessary or informative. *See Ellis v. Liberty Life Assurance Co. of Boston,* 958 F.3d 1271, 1283 (10th Cir. 2020) ("The general rule is that *federal* choice-of-law principles are used in resolving *federal* causes of action.") (emphasis added); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1203 (10th Cir. 1990) (considering, for the purpose of choice-of-law in a *federal claim*, the most-significant-relationship test set out by Restatement (Second) of Conflict of Laws).

In this case, because Utah is largely the place of negotiation and contracting of the 2019 Contract, *see* Am. Compl. ¶¶ 34-40, because it is where Express One pleads that it was "induced" to enter in the contract (this agreement being "the last act necessary to make the contract valid and binding occurs," *Surety Underwriters v. E&C Trucking, Inc.*, 2000 UT 71, ¶ 26, 10 P.3d 338), and because it is Express One's principal place of business, the court concludes that Utah has the most significant relationship with the contract, and to the extent that state law would be incorporated into the federal common law of contracts under the principles set out in *Turley*, such state law should be provided by Utah.

In considering Utah law under each claim asserted below, the court concludes that the results would be no different from those derived from principles of federal law.

contract itself. Under federal contract principles, if the terms of a contract are not ambiguous, this court determines the parties' intent from the language of the agreement itself. *Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226, 1239 (10th Cir. 2018) (citing *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993), and *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 560-61 (9th Cir. 2016)).[7]

A contract must also be construed as a whole and "in a manner that gives meaning to all of its provisions and makes sense." *Bell/Heery v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014). Under federal law, contract interpretation is a matter of law and may be addressed in the resolution of a motion to dismiss to determine whether the facts a plaintiff alleges would, if true, establish a breach of contract. *Id.*; *Sunrez Corp. v. United States*, 157 Fed. Cl. 640, 647 (2022).[8]

---

[7] Similarly, under Utah law, when interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling. *Johnson v. Schnabel*, 2023 UT App 102, ¶ 14, 536 P.3d 1147; *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599; *see also Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991). If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law. *Zions First Nat'l Bank v. Nat'l Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988); *Bakowski v. Mt. States Steel, Inc.*, 2002 UT 62, ¶ 16, 52 P.3d 1179.

A contract is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Schnabel*, 2023 UT App 102, ¶ 14, 536 P.3d 1147 (citation omitted). "The question of whether a contract is ambiguous is decided by the court as a matter of law." *Lunceford v. Lunceford*, 2006 UT App 266, ¶ 13, 139 P.3d 1073.

[8] Under Utah law, when a case turns on the interpretation of a contract, a claim for breach of contract will withstand a motion to dismiss if the operative contract language is ambiguous. *Haynes v. Department of Public Safety*, 2020 UT App 19, ¶ 11, 460 P.3d 565.

When "an ambiguity exists, the intent of the parties becomes a question of fact upon which parol evidence of the parties' intentions should be admitted." *E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 21, 336 P.3d 1077; *Ostler v. Dep't of Pub. Safety*, 2022 UT App 6, ¶ 31, 505 P.3d 1119.

Express One pleads that USPS breached the 2019 Contract in four ways:

(a) wrongfully terminating the 2019 Contract in violation of applicable administrative regulations and procedures and in contravention of numerous USPS representations to the contrary, (b) misappropriating and misusing Express One's confidential and proprietary business information, (c) violating the requirements of the PAEA, which were expressly adopted and incorporated into the 2019 Contract, and (d) developing and implementing a plan to cancel the 2019 Contract "to take control of" and "recapture" Express One's "reseller spread" or "margin."

Am. Compl. ¶ 113. Each of these theories is discussed in turn.

### A. Termination of the Contract and a Plan to Cancel

Express One's first breach theory regards USPS's election to terminate the 2019 Contract. Its fourth theory regards USPS's alleged plan to cancel the Contract. Because these theories are closely related, both are considered here. Regarding these termination-related theories, USPS demurs by pointing to Section III of the Contract, under which the contract was set to expire on December 31, 2023, unless "[t]erminated by the Postal Service with ninety (90) calendar days' notice to Customer in writing[.]" Mot. at 7.

Because extracontractual oral representations are irrelevant in the interpretation of the unambiguous provision of an integrated contract, *see Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338-39 (Fed. Cir. 2006), USPS argues that any allegations regarding such oral representations are irrelevant. The court agrees that the plain language of the 2019 Contract indeed

---

This does not mean, however, that contract provisions are necessarily ambiguous just because two parties ascribe different meanings to those provisions. Instead, "[t]o demonstrate ambiguity, the contrary positions of the parties must each be tenable." *R&R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1074 (Utah 1997).

Thus, where "the language of the agreement is reasonably susceptible to [the parties'] contended interpretation[s], we conclude [the agreement] . . . is ambiguous." *Lunceford*, 2006 UT App 266, ¶¶ 13-14 (citation omitted).

8

gave USPS an unconditional power to terminate the contract, which it could exercise for any reason given proper notice. *Accord Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1268 (10th Cir. 1988). Thus, the court disregards Express One's allegations of extracontractual representations as irrelevant to the interpretation of unambiguous contractual language.

In an attempt to circumvent this plain language, Express One argues that its breach claim under the termination theory is not based on "the mere act of termination," Opp'n Mem. at 3, but instead termination "in violation of applicable administrative regulations and procedures in contravention of numerous USPS representations to the contrary." *Id*. (quoting Am. Compl. ¶ 113); *see also* Am. Compl. ¶ 43. Express One argues that evidence of the oral representations is relevant "not to vary the terms of the contract, but to establish USPS's course of conduct that shows a breach," Opp'n Mem. at 4, and that the termination was wrongful because it was part of a "plan to terminate," which would constitute fraud. *Id*.[9]

However, in pointing to USPS's course of conduct as apparently informing Express One's *expectations* regarding the performance of the Contract—rather than the *meaning* of its terms— Express One's breach theory transgresses into the province of the Second Claim (for a violation of an implied covenant of good faith and fair dealing). This is also true to the extent that Express One argues that the Contract "did not permit USPS to terminate as part of a scheme to undermine Express One's interests in the contract and take control of Express One's business." *Id*. at 3.

While the court considers Express One's analogous arguments of USPS's alleged bad faith in conjunction with its Second Claim, it concludes that Express One fails to plead a breach of

---

[9] To the extent that Express One pleads that USPS *fraudulently induced* its assent to the contract, it pleads an intentional tort over which, as discussed in this court's 12(b)(1) Order, this court lacks jurisdiction. *See* Am. Compl. ¶ 43.

contract under either its termination theory of breach or its "plan to cancel" theory. The legal wrong that Express One asserts under these theories does not arise under the terms of the contract, but instead seems to relate to a purported implied covenant of good faith and fair dealing. Thus, Express One's first and fourth breach theories fail to state a claim upon which relief can be grated.[10]

### B. Misappropriating "Business Information"

Next, Express One pleads that USPS breached the Contract by "misappropriating and misusing Express One's confidential and proprietary business information." Am. Compl. ¶ 113. Although this court has determined that it lacks jurisdiction over misappropriation of trade secret claims as an independent cause of action, *see* 12(b)(1) Order, the question here turns on whether the 2019 Contract created a contractual duty regarding the use of Express One's business information, and whether Express One has sufficiently pleaded the breach of such a duty.

In relevant part, Express One argues that the 2019 Contract "restricted how USPS could use Express One's confidential customer, pricing and business information." Am. Compl. ¶ 46. Section I(N) of that contract, central to Express One's contractual misappropriation claim, reads as follows:

> Quarterly Business Reviews. The Parties shall jointly conduct a business review of Customer's performance expectations under this Contract either in person, by telecom or by webinar each Contract Quarter in each year of the Contract. If either Party is unable to conduct a business review in any calendar quarter, it shall notify the other Party in writing (i.e. email or mail) of that fact and propose a date as soon as practicable thereafter. On a quarterly basis, <u>Customer shall provide the Postal Service with all Tier 2 Merchants, Tier 3 Merchants, and Platforms along with their associated volumes, spend, MIDs, permits or meters, PCIDs where applicable, and</u>

---

[10] Similarly, whatever "applicable administrative regulations and procedures" complained of under the first breach theory are not integrated into the Contract and cannot serve as the basis for a breach-of-contract claim, including for the reasons discussed below.

<u>all other information the Postal Service determine[s] necessary for the purposes of validating Merchant and Platform shipping volume and spend per product.</u>

*Id*. (emphasis added).

This provision, Express One argues, "specifically limited how USPS was permitted to use" Express One's business information." Opp'n Mem. at 4. [11] Because it alleges that USPS used this information for other purposes—including as part of a "scheme to create a [] platform" to compete with Express One, Opp'n Mem. at 6—Express One argues that it has stated a claim upon which relief can be granted. USPS, on the other hand, argues that Section I(N) cannot be read to limit the Postal Service's use of information. The court agrees that the language of Section I(N) requiring disclosure of some information "for the purposes of validating Merchant and Platform shipping volume and spend per product" cannot reasonably provide the basis for the broad contractual duties that Express One would find in support of its misappropriation theory.

Express One argues that, under the doctrine of *expressio unius est exclusio alterius*,[12] because Section I(N) "specifically identifies the only permitted use of the information," it implicitly prohibited other uses. Opp'n Mem. at 5. But this argument stretches the logical implications of *expressio unius* too far. Section I(N) creates an obligation on the part of Express One to provide information to USPS for the validation purposes outlined in the Contract. And

---

[11] Express One also points to Section V of the Contract as supporting its claims to contractual restrictions on the use of its information by USPS. *See* Am. Compl. ¶ 47. But that Section is much more narrow than Express One seems to suggest. That provision relates to the process of securing approval for the Contract by the Postal Regulatory Commission and explicitly provides USPS with the discretion to define what information is eligible for protection. *See* 2019 Contract § V.

[12] The doctrine of *expressio unius est exclusio alterius* is "[a] canon of construction holding that to express or include one thing implies the exclusion of the other[.]" *Expressio Unius Est Exclusio Alterius,* BLACK'S LAW DICTIONARY (11th ed. 2019).

11

*expressio unius* might be properly understood to limit the scope of Express One's obligations on this front. For example, if USPS demanded information for some other purpose, Express One could properly invoke *expressio unius* to defensively limit the scope of its obligation. However, this logical outgrowth of *expressio unius* certainly does not create a *counter-obligation* on USPS that could be invoked by Express One as a basis for breach.[13]

That is, the doctrine of *expressio unius* means that expressing one of Express One's contractual duties excludes, by implication, the existence of other such duties imposed on Express One. It does not, however, provide a sword by which Express One can assert the existence of other duties imposed on its contractual counterparty. In short, while *expressio unius* limits the obligations imposed on a party, it cannot be used to fashion counter-obligations. This provision cannot plausibly support Express One's reading, and Express One thus fails to state a claim upon which relief can be granted for breach of contract under this theory.

### C.  Violating PAEA

Finally, Express One pleads breach of contract under the theory that the Contract incorporated by reference the terms of PAEA, which Express One alleges USPS violated. *See* Am. Compl. ¶¶ 111, 113. Although this court has determined that it lacks jurisdiction to hear claims brought under PAEA, *see* 12(b)(1) Order, the question presented here is whether, through its

---

[13] Additionally, the court understands that Section I(N)'s reference to the "purposes of validating Merchant and Platform shipping volume and spend per product" may possibly be limited only to "all *other* information that the Postal Service determine[s] necessary" and not the earlier enumerated information classes under the rule of the last antecedent. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows[.]"); 2A N. Singer, Sutherland on Statutory Construction § 47.33 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.").

reference to PAEA, the Contract created an independent contractual duty on the part of USPS that is defined by the terms of that Act, and thus would be within this court's jurisdiction. The introductory recital to the 2019 Contract declares that "it is the intention of the Parties to enter into a shipping services contract that will benefit the Postal Service, the postal system as a whole, and Customer, and that will comply with the requirements of Title 39 United States Code, as amended by the Postal Accountability and Enhancement Act of 2006." Am. Compl. ¶¶ 41, 110.

Under the federal common law of contracts, incorporation of extrinsic documents—including statutes or regulations—by reference demands particular expression of intent by contracting parties. Courts interpreting federal contracts have expressed a strong reluctance "to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract *explicitly provides* for their incorporation. *St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008) (quoting *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988) (emphasis added)); *cf. S. Cal. Edison v. United States*, 226 F.3d 1349, 1353 (Fed. Cir. 2000) (holding that the contracts-in-suit successfully incorporated the terms and conditions of certain regulations by specifically referring to the regulations, the text of which was attached to the contract as an exhibit, "as fully and completely as though set forth herein [i.e., in the contract] in length"); *accord Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008).

In *Smithson*, for example, the contract-at-suit declared that it was "subject to the present regulations of the secured party [FmHA] and to its future regulations not inconsistent with the express provisions hereof." 847 F.2d at 794. Unlike the Contract here, which merely states that it is "the intention of the Parties" to enter into a contract "that will comply with the requirements" of PAEA, the *Smithson* contract expressly stated that it was *subject to* the present regulations of the

13

agency-contracting party. Nonetheless, the *Smithson* court found that the regulations were not successfully incorporated into the contract. *Id*. at 795. And if the *Smithson* contract did not incorporate by reference the relevant regulations under federal common law principles, then the instant Contract could not reasonably have incorporated by reference the provisions of PAEA. The Contract contains no express, explicit or specific integration of any extrinsic document or intent to integrate PAEA, and thus cannot, under federal common law, be interpreted as so doing.[14]

No intent to incorporate PAEA was express or clear, and the Contract's reference to PAEA certainly left reasonable doubt that incorporation was contemplated. *Northrop Grumman Info. Tech., Inc.*, 535 F.3d at 1344-45; *accord S. Cal. Fed. S&L Ass'n v. United States*, 422 F.3d 1319 (Fed. Cir. 2005); *Franklin Fed. Sav. Bank v. United States*, 431 F.3d 1360, 1366 & n.4 (Fed. Cir. 2005).[15] Thus, the court concludes that allegations of a violation of PAEA cannot support a well-

---

[14] This is made especially clear by contrasting the reference to PAEA in the recital against Section I.A of the contract, immediately following the recitals, which references an extrinsic document, links to such document, and states that such document "appl[ies] to mail tendered under this Contract." 2019 Contract at 1.

While the court does not decide whether this reference would successfully incorporate such document, it serves to show that the parties were well aware of how to refer to extrinsic documents and signal an intent that the Contract be governed thereby.

[15] Similarly, under Utah law, "the terms of another document cannot be incorporated by reference" into a contract "without specific language." *Hous. Auth. v. Snyder*, 2002 UT 28, ¶ 19, 44 P.3d 724. The Utah Supreme Court has held that "the reference" to the extrinsic document "'must be clear and unequivocal' and alert the non-drafting party that terms from another document are being incorporated." *Id*. (quoting *Consolidated Realty Group v. Sizzling Platter, Inc.*, 930 P.2d 268, 273 (Utah Ct. App. 1996)); *accord Peterson & Simpson v. IHC Health Servs.*, 2009 UT 54, ¶ 15, 217 P.3d 716; *Hillcrest Inv. Co., LLC v. DOT*, 2015 UT App 140, ¶¶ 12-13, 352 P.3d 128.

Here, the expression of a general intent that the Contract would "comply with the requirements" of PAEA does not constitute "specific" and "unequivocal" language that the terms of the statute were incorporated into the Contract. As a matter of law, the Contract is not ambiguous on this matter, and cannot plausibly be interpreted under the standard articulated under federal common

14

pleaded claim of breach of contract. For this reason—and the reasons stated above in the foregoing sections—Express One has failed to state a claim that USPS breached the 2019 Contract, and its First Claim is dismissed for failure to state a claim upon which relief can be granted.

## II.     Second Claim: Breach of Duty of Good Faith and Fair Dealing

Express One's second cause of action is pleaded as a claim for breach of the implied covenant of good faith and fair dealing. *See* Am. Compl. ¶ 118. Express One asserts that USPS breached this implied covenant in the following ways:

> (a) Terminating the reseller program;
> (b) Terminating the 2019 Contract prematurely;
> (c) Misappropriating and misusing Express One's confidential business information and trade secrets;
> (d) Setting up a competing software platform;
> (e) Soliciting Express One's platform partners and customers despite promising not to do so;
> (f) Making numerous false and misleading representations to Express One, including that the USPS would not terminate the 2019 Contract, that Express One was a valued partner, that the USPS and Express One would build out ecommerce shipping together, that the USPS would not use Express One's confidential customer, pricing and business information to compete against it, and that the USPS would not steal Express One's platform partners and customers;
> (g) Providing preferential treatment and pricing to other companies, including companies like Pirate Ship that are associated with former USPS executives;
> (h) Developing and implementing a detailed plan to terminate the reseller program and the 2019 Contract so that the USPS could capture Express One's business and profit margin, which plan expressly referenced the "contractually required data" being extracted by the USPS, and notwithstanding its subsequent representations that no such plan to terminate Express One existed; and
> (i) Encouraging Express One to continue to invest in and build its reseller business when the USPS was already planning to terminate the reseller program.

Am. Compl. ¶ 118.

---

law or Utah law as incorporating PAEA by reference sufficient to support a well-pleaded breach claim.

USPS moves for dismissal of the Second Claim on the grounds that, because no "particular provision of the Contract" was breached, a breach of the implied duty of good faith and fair dealing cannot be asserted. Mot. at 13. Alternatively, each of Express One's theories of breach of the implied covenant fail, USPS argues, because they are "either refuted by or not reflected in the Contract." *Id*. at 14.

Implied in every contract-at-suit under federal contract law is a duty of good faith and fair dealing that requires a party to refrain from interfering with another party's performance or from acting to destroy another party's reasonable expectations regarding the fruits of the contract. *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). "For example, this implied covenant guarantees that the government will not eliminate or rescind contractual benefits through action that is specifically designed to reappropriate the benefits and thereby abrogate the government's obligations under the contract." *Bell/Heery*, 739 F.3d at 1335 (citing *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 829 (Fed. Cir. 2010)).

However, an implied covenant may not "create duties inconsistent with the contract's provisions." *Id*. "Although the implied duty of good faith and fair dealing attaches to every contract, what that duty entails depends in part on what that contract promises (or disclaims)." *Precision Pine*, 596 F.3d at 830.[16] Thus, at bottom, the implied duty "cannot expand a party's

---

[16] Under Utah law, claims under the implied covenant of good faith and fair dealing are not assessed by square reference to the terms of the contract alone; instead, a "claim for breach of the implied covenant of good faith and fair dealing . . . is based on judicially recognized duties not found within the four corners of the contract." *Christiansen v. Farmers Ins. Exch.*, 2005 UT 21, ¶ 10, 116 P.3d 259. Such duties "exist whenever a contract is entered, and are imposed on the parties 'consistent with the agreed common purpose' of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) (citation omitted). Although the duties are informed by judicially recognized principles not found within the language of the contract itself,

contractual duties beyond those in the express contract." *Id.* at 831; *accord Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014).

At every turn, then, this court considers whether the implied duty asserted by Express One would expand its rights beyond those in the 2019 Contract and whether Express One's expectations were reasonable in light of the Contract's terms. The court concludes that Express One's nine theories of breach of the implied covenant suggest that it is seeking to establish rights either expressly refuted by or otherwise inconsistent with the contract itself. *Precision Pine*, 596 F.3d at 831; *Bell/Heery*, 739 F.3d at 1335.[17]

### A. Termination

Express One's theories (a) and (b) center on USPS's termination of the Contract and the reseller program. But, including for the reasons discussed above, USPS's right to terminate the 2019 Contract upon 90 days' notice (and, by extension, the reseller program) were confirmed by the terms of the Contract. Similarly, developing a potential disintermediation plan to be executed

---

such duties arise out of the parties' contractual relationship. *Peterson & Simpson v. IHC Health Servs.*, 2009 UT 54, ¶ 21, 217 P.3d 716.

While a court searches for more than the meaning of the plain language of the contract, a court will *not* attempt to "make a better contract for the parties than they have made for themselves . . . An express agreement or covenant relating to a specific contract right excludes the possibility of an implied covenant of a different or contradictory nature." *Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 505 (Utah 1980) (citations omitted); *accord Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 505 (Utah 1980) ("A duty of good faith does not mean that a party vested with a clear right is obligated to exercise that right to its own detriment for the purpose of benefiting another party to the contract. A court will not enforce asserted rights that are not supported by the contract itself.").

[17] For analogues under Utah law, see *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 10 n.4, 266 P.3d 814, and *Anderson v. Larry H. Miller Communs. Corp.*, 2012 UT App 196, ¶ 17, 284 P.3d 674.

in tandem with the termination of the Contract for legitimate business purposes falls within the scope of that contractual right.[18]

USPS's alleged representations to Express One, as under theory (f), cannot serve as the basis for a modification of the termination rights to which both parties agreed in an integrated contract. *See* Am. Compl. ¶ 118. Under federal common law, it is certainly the case that "it is possible to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties and in such a case the issue of good faith is irrelevant," and that is precisely the sort of discretion given to USPS in the instant Contract's termination provision. *Big Horn Coal Co.*, 852 F.2d at 1267. "In such a case the reason for invoking the provision is irrelevant. The reason may be purely a whim or caprice; all that matters is that proper notice is given." *Id*. Thus, Express One's expectations must be informed by the terms of the Contract itself, including the unqualified termination provision. This, in conjunction with the parties' contracting history, defeats Express One's claims that its expectations that USPS would not exercise its contractual termination right were reasonable.

### B.  Misappropriation

Theories (c), (d), and (e) center on USPS's alleged misappropriation and use of Express One's business information in the run-up to the creation of a competing e-commerce platform. Use of Express One's business information (like many of the other implied covenant theories Express

---

[18] Because Express One concedes that good-faith reasons existed for the termination of the reseller program, *see* Am. Compl. ¶ 78, no bad faith is plausibly pleaded, arguably providing an independent ground for the dismissal of this claim. *See TVA v. United States*, 60 Fed. Cl. 665, 672 (2004) ("[I]n order to state a claim premised on a violation of the obligation of good faith and fair dealing, plaintiffs must allege facts which if proved would constitute malice or an intent to injure.") (internal quotation marks omitted); *accord Leone v. Owsley*, 810 F.3d 1149, 1156 (10th Cir. 2015); *BGT Holdings LLC v. United States*, 984 F.3d 1003, 1011 (Fed. Cir. 2020).

One asserts) may have been contrary to Express One's business interests, but because it is not a bad-faith interference with a party's ability to reap the fruits of a contract as informed by reasonable expectations, it is simply not germane to a claim under the implied covenant of good faith and fair dealing. Having determined that the use of Express One's information was not constrained by the Contract (as discussed above), the implied duty cannot be employed to expand the rights provided by contract, and Express One cannot invoke the implied covenant to effectively renegotiate the Contract's terms. Even if USPS were to have used information or customer lists for purposes other than those outlined in the Quarterly Business Reviews provision of the contract, such use would not constitute a bad-faith violation of any benefit provided for under the Contract (namely, the benefit of participating in the reseller program during the period the Contract was in effect). *See Precision Pine*, 596 F.3d at 830. As before, the court declines to renegotiate the terms of the Contract in Express One's favor to create novel obligations on either party.

### C.  Pre-formation and Post-termination Conduct

Theory (f) relates to USPS's pre-formation conduct, while theories (d) and (e) relate to USPS activities that allegedly harmed Express One by USPS's pre-contract promises or post-termination "competition." However, under no theory as pleaded could USPS have undermined Express One's ability to reap the fruits of the Contract. The court reiterates that Express One's reasonable expectations of the fruits that it might reap under the Contract were necessarily bounded by the Contract's terminable nature. Because the implied covenant of good faith and fair dealing comes into existence upon the formation of the contract, *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012), pre-formation conduct and representations cannot provide the basis for a claim for breach of the implied covenant.

Similarly, USPS's post-termination conduct (such as the launch of a disintermediated e-commerce platform and engagement with former Express One customers) cannot interfere with Express One's right to reap the fruits of the Contract because, once the Contract was terminated, Express One could claim no entitlements under it. So long as USPS did not undermine, in bad faith, Express One's ability to receive the benefits of the Contract during the time that the Contract was in effect, it could not have breached the implied covenant. The benefit Express One bargained for was the right to participate in the reseller program, bounded by USPS's absolute right to terminate the Contract and program with sufficient notice.

The contract qualified that right in some ways and not others, and the implied duty of good faith and fair dealing cannot be invoked to retroactively renegotiate these terms. *See id*. at 831. So long as USPS did not interfere, in bad faith, with Express One's right to participate in the reseller program so long as the Contract was in effect, it did not breach the implied covenant.[19] Such bad-faith or malicious interference is not plausibly pleaded, and these theories cannot support Express One's Second Claim.

### D.  Plan to Cancel

Regarding the "plan to cancel" theory (theory (h)), while an intent *not* to perform a contract at the moment of formation might reek of bad faith—even promissory fraud, *see* Ian Ayres & Gregory Klass, *Promissory Fraud without Breach*, 2004 WIS. L. REV. 507 (2004)—Express One's pleadings here do not allege an intent on the part of USPS not to perform from the outset. Instead, the Amended Complaint speaks of potential recommendations, considerations, research, and

---

[19] Theory (i) fails for the same reasons as theories (d), (e), and (f). Theory (g) similarly complains of USPS conduct regarding disintermediation or its decision not to renegotiate and does not relate to bad-faith interference with any rights provided under the Contract. *See* Am. Compl. ¶ 87-88.

planning regarding disintermediation. *See* Am. Compl. ¶¶ 67-76. The "scheming" that Express One complains of merely reveals deliberations regarding the business benefits of exercising a termination provision expressly provided for in the contract. This is, of course, a far cry from a bad-faith intent *not* to perform from the moment of formation, and instead tracks neatly with USPS's discretionary termination right agreed to by Express One.

Related to the issue of any of USPS's pre-formation representations under theory (f), if Express One subjectively expected the termination provision to be superseded by oral representations of USPS's intent, such expectations were unreasonable. And given USPS's contractual right to terminate the Contract, USPS's actions upon cancellation of the contract definitionally could not have hampered Express One's ability to benefit from the Contract. To the extent that Express One claims that it was fraudulently induced as a result of USPS's representations, it suffers from a category error—that is simply not what the implied covenant protects.

Finally, Express One argues that USPS's entering into the Contract and consideration of a seller disintermediation plan constituted a "bait-and-switch," a breach theory recognized in some federal common law precedent particular to government contracts. *Precision Pine*, 596 F.3d at 829. Under such a bait-and-switch, "[t]he government may be liable for damages when the subsequent government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract." *Id*.

But the illustrative examples of bait-and-switches for which the government may be liable under an implied covenant theory in *Precision Pine* both involved retroactive governmental action targeting contractual parties' existing contract rights. The pleading of the facts in this action is

immediately distinguishable from these cases because the parties' contractual rights are expressly bounded by the discretionary termination provision.

Regardless of whether USPS's actions were "specifically targeted," as *Precision Pine* demands, *id.*, they were not re-appropriative of any fruits offered by the terms of the Contract because the Contract permitted discretionary termination at any time upon 90 days' notice, and any "reappropriation" occurred after the Contract was terminated and Express One had no entitlements thereunder. Express One received the fruits of the contract to which it was entitled while the Contract was in effect, and the government did not reappropriate these benefits retroactively.

In short, no USPS action as pleaded by Express One plausibly interfered with Express One's ability to reap the fruit to which it was entitled under the Contract while the Contract was in place. Although a claim for breach of the implied covenant can be used to protect against bad-faith interference with the rights provided by contract, it cannot be used to inject new and un-bargained-for terms into a contract. Under the federal common law of contracts, Express One has failed to state a claim plausible on its face that USPS breached an implied covenant of good faith and fair dealing through the violation of any reasonable expectation of benefits guaranteed by the Contract.[20]

---

[20] Additionally, Utah courts at least "have set a high bar for the invocation of a new covenant. Under [Utah law], the court may recognize a covenant of good faith and fair dealing where it is clear from the parties' 'course of dealings' or a settled custom or usage of trade that the parties undoubtedly would have agreed to the covenant if they had considered and addressed it." *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶¶ 10-15, 266 P.3d 814 (citation omitted); *accord Oakwood Vill. Ltd. Liab. Co. v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226; *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) ("The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties.").

### III.    Third Claim: Breach of Implied Duty to Disclose Superior Knowledge

Express One's Third Claim is pleaded under a theory of breach of an implied duty to disclose superior knowledge, Am. Compl. ¶¶ 123-31, which Express One argues is established as a cause of action in federal contract law by Federal Circuit authority. *See* Opp'n Mem. at 12-13. USPS moves for dismissal of this claim on the grounds that no such cause of action is recognized "by federal common law or Utah courts." Mot. at 16.

*AT&T Comm. Inv. v. Perry*, which Express One cites in support of the existence of such a cause of action, discusses a failure to disclose superior knowledge for the purpose of determining whether the government, as party to a contract, breached a contract or acted to support "a claim of misrepresentation." 296 F.3d 1307, 1312-13 (Fed. Cir. 2002) (citing *Helene Curtis Industries, Inc. v. United States*, 312 F.2d 774, 778 (Fed. Cl. 1963)); *accord GAF Corp. v. United States*, 932 F.2d 947, 949 (Fed. Cir. 1991) (discussing the "superior knowledge" doctrine as a theory of breach of contract); *but cf. S. Cal. Edison v. United States*, 58 Fed. Cl. 313, 325 (2003) (describing the doctrine as "closely related to the implied covenant of good faith and fair dealing").

Putting to one side whether the duty asserted by Express One can support an independent cause of action—or is instead merely a theory of breach on the one hand (which thus should have been pleaded as a theory under the First Claim) *or* a theory of fraudulent misrepresentation (over which this court would have no jurisdiction)—the court is satisfied that Express One has not

---

Here, however, there are no meaningful allegations of (or argument regarding) a course of dealing by the parties sufficient to support the existence of implied duties of good faith and fair dealing regarding the solicitation of customers, creating a competing software platform, *et cetera*, even if, *arguendo*, such claims were adequately pleaded under Rule 8. *See Marin*, 2011 UT 64, ¶ 15.

sufficiently pleaded a breach of such a duty, however it should be understood. As laid out by the

Federal Circuit,

> [t]o show a breach under the superior knowledge doctrine, a contractor claiming breach by non-disclosure must produce specific evidence that it (1) undertook to perform without vital knowledge of a fact that affects performance costs or direction, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information.

*GAF Corp.*, 932 F.2d at 949.

Here, Express One alleges that "USPS planned to use Express One's confidential

information to develop a competing platform, with the plan to terminate the reseller program and

the [] Contract[.]" Opp'n Mem. at 13; Am. Compl. ¶ 113. USPS responds by arguing that, as in the

Second Claim, the implied duties asserted by Express One run counter to the plain terms of the

Contract. *See* Reply Mem. at 8-9.

The court concludes that, under prong (3) of *GAF Corp.*, no contract specification supplied

by USPS could have reasonably misled Express One regarding the fact of any internal discussions

of disintermediation. As in *Perry*, the deliberations to end the reseller program were conjectural—

a "potential" future circumstance—and the final decision to end the program did not occur until

after the formation of the Contract. *Cf.* 296 F.3d at 1312-13. As in the Second Claim, although a

fixed intent *not* to perform on the contract might satisfy the requirements of the duty, Express One

does not plead such intent.

As pleaded, the Amended Complaint merely alleges deliberations regarding the *possibility*

of future disintermediation, which is not vital knowledge of a *fact* about which the Contract misled

Express One.[21] Additionally—as has been emphasized throughout this order—USPS's discretionary termination entitlement certainly put Express One on notice to inquire regarding the existence of any deliberations regarding or the possibility of early termination of the Contract or the reseller program. *See Scott Timber*, 692 F.3d at 1373. Here, as above, oral representations to the contrary cannot overpower the plain text of (and reasonable expectations created by) the terms of an integrated contract. *Contra* Opp'n Mem. at 13.

## IV.     Fifth Claim: Unjust Enrichment

Express One's final surviving claim is pleaded under a claim of unjust enrichment in the alternative to its breach-of-contract claim. Am. Compl. ¶¶ 141-47. The parties dispute whether USPS has challenged the contract "in ways that permit Express One to pursue unjust enrichment as an alternative to its contract claims." Opp'n Mem. at 13. As Express One acknowledges in its opposition brief, however, restitution claims such as this one cannot proceed in the face of an enforceable contract. *Id*.

Under general principles of restitution law, an action for unjust enrichment may only proceed "in the absence of a contract" or where there is no "valid contract." Restatement (Third) of Restitution and Unjust Enrichment § 2; *accord id*. cmt. c ("Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations."); *accord US Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013) (citing Restatement (Third) of Restitution and Unjust Enrichment § 2(2)).

---

[21] Further, the nature of Express One's claims are probably better characterized as a complaint regarding the violation of a promise regarding intent rather than a representation regarding fact. Thus, invocation of this implied duty is likely a category error.

Although unjust enrichment claims may persist while questions regarding the validity of the contract remain, no such questions are at play here. Neither party has questioned whether the 2019 Contract is enforceable or valid—only whether it stands for the propositions for which Express One cited it in its Amended Complaint and whether it was breached. The fact that USPS disputes Express One's *interpretation* of the Contract certainly does not mean that it questions that it was valid and enforceable. Thus, the unjust enrichment claim is properly dismissed.[22]

## CONCLUSION & ORDER

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim, ECF No. 71, is **GRANTED**, and Express One's remaining claims are **DISMISSED**.

DATED March 13, 2024.

BY THE COURT

Jill N. Parrish
United States District Court Judge

---

[22] The same result is demanded by Utah law regarding unjust enrichment. *See American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1192-1193 (Utah 1996); *Mann v. American W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978) ( "Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation."); *GTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 22, 447 P.3d 123; *Nickerson Co. v. Energy W. Mining Co.*, 2009 UT App 366 (unpublished); *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 10, 167 P.3d 1080; *Davies v. Olson*, 746 P.2d 264, 268-70 (Utah Ct. App. 1987); *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 44, 355 P.3d 1000.